THOMAS, Justice.
The parties agreed to the relevant facts and the chancellor certified' for answer by this Coilrt 'the questions of law that arose from those facts. 30 F.S.A. Supreme Court Rules, Rule 38.
In a- suit by. the plaintiff, Betty D. Atkinson, a decree was entered granting her a divorce from the defendant, Robert L. .Atkinson, and ordering him to pay her monthly a stated amount, for the support of their minor children. In a later order the amount of the periodic payments was niodi-fied. Subsequently the plaintiff filed vjith the clerk of the circuit court an' affidavit setting out the date and amount of the last payment by the defendant and the sum defendant was in arrears. The clerk issued a writ of attachment directed to the sheriff ordering him to take the .defendant into custody' and detain him until he complied with the final decree, as revised, by liquidating. the arrearage.
Substance of the questions certified is the appropriateness of fhe procedure authorized by the rule, 30 F.S.A. rule 3.15, 1954- Rules of Civil Procedure (former Equity Rule 67), as a remedy when a man, who has been ordered, as an incident to a divorce, to pay specified periodic amounts for the support of his child, defaults.
We think that the rule is not applicable in such situations; The rule itself, the illustrations given in the rule and the nature of proceedings to enforce payments stipulated in a divorce decree considered together all refute, we think, the argument that such procedure is permissible. Cf. Gordman Corp. v. Bethell Construction Co., Fla., 77 So.2d 449.
The relevant part of the rule is the provision for an attachment against a party upon the affidavit of his adversary that he has failed to perform a “specific act.” The failure to perform a specific act such'as the execution of a conveyance, or the surrender of a document, the examples set out in the rule, is a relatively simple matter and might justify the attachment because the person attached had it wholly within his power to gain his discharge by merely doing the act ’réquired. Except to show 'the- contrast between-these conditions and-the payment of a *465 debt created by a divorce decree and resulting from accumulated payments we pursue this thought no farther because the validity of the rule itself is not under attack. The act required of the defendant, though it might be called “specific”, is in reality one of many facets.
Turning to the rule, it expressly provides that the decree “shall * * * prescribe the time within which the act shall be done, of which the defendant shall be bound, without further service, to take notice * * (Italics supplied.) This; of course, is effective at the conclusion of a trial at which the defendant has been heard. Presumably the defendant has then become held to do a particular act and given a limited time within which to comply.
But to project the enforcement of such a plain requirement to the conditions arising after a final decree that might call for revisions of payments for support money, upward or downward, according to the needs of one party and the ability of another party to pay would become an impracticable as well as unlawful method, for the manner of enforcement is as absolute as the provision is simple.
A chancellor before whom the defaulting husband could be hailed by a citation for contempt might decide that the delinquent should be punished because he could have paid and did not, and fix the term of imprisonment for contempt; or the chancellor might conclude that the delinquent had good reason for his failure to comply, and excuse him; or the chancellor might order that a certain amount be paid and that the offending party be incarcerated until he complied. All these situations call for judicial determination before the defendant could be deprived of his liberty, and none of them, not even the first, is so absolute that attachment as a matter of law would be warranted, or as a matter of practicality would necessarily accomplish the result intended, that is, the recovery of the sum of the defaulted payments.
Two extremes may be contemplated in case of failure to pay support money: the ability of the defendant to pay any or all payments at any time since the entry of the order, the inability of the defendant to pay anything at any time. Between these extremes could be myriads of situations that might justify punishment in varying degrees, or that might not call for any discipline at all. But the invocation of the rule could meet only the first extreme condition, ability to pay at all times and downright defiance by the defendant of the original order.
It seems to us that the utter irrelevance of the rule to the facts in this case can be demonstrated by supposing that the defendant cannot now pay the amount of the ar-rearage. Presumably he would, despite any mitigating circumstances, either remain in custody indefinitely or be relegated to some other remedy. If, as we have said, he could have paid and did not, punishment would, in contempt proceedings, be meted out according to the degree of his offense. But if he were detained under the attachment for failure to pay what he could not possibly pay, his imprisonment or retention in custody would be wholly unlawful from his standpoint and it would be unavailing from the standpoint of his adversary.
The rule cannot be applied to persons defaulting in the periodic payments required in decrees of divorce. So to apply it would substitute the arbitrary action of the rule for contempt proceedings and thereby circumvent the protection accorded a defendant under the Constitution by depriving him of the opportunity to meet the charge before incarceration. Satterfield v. Satterfield, Fla., 39 So.2d 72; State ex rel. Giblin v. Sullivan, 157 Fla. 496, 26 So.2d 509.
DREW, C. J., and TERRELL, SE-BRING, HOBSON, ROBERTS and THORNAL, JJ., concur.